In Special Term—February 1855.

GHOLSON, J. presiding.

### ROSS & RICKER *vs*. RICHARD R. JOHNSON.

The right of set-off depends on statutory provisions; it was not allowed at common law.

The Code repealed the former statutes on the subject of set-off, but has introduced no new rule as to the *right* of set-off.

A set-off is properly a cause of action against the adverse party; and to authorize a set-off there must be cross-demands.

Such a right of set-off may exist before suit brought, and Section 99 of the Code was intended to prevent a defeat of the right, by a transfer or assignment of the demand held by one party; that section requires not only that there should be cross-demands, but that they should be such, that *at the time of the transfer or assignment*, each party could have brought an action on his demand against the other.

A negotiable security before its maturity, is not a cross-demand within the meaning of Section 99 of the Code. A party, who has obtained such a security before it was due, and otherwise holding in good faith and upon good consideration, cannot be affected by a demand or independent cause of action, against the person from whom it was received, in favor of any party liable on the negotiable security, although existing at the time of its transfer, and there was notice thereof.

This was an action on a promissory note, made by the defendant to Nelson Newman, or order, and by him endorsed to the plaintiffs.

The note on which the action was brought, was given by the defendant to Newman, as a part of the consideration on a sale of a patent right. Before the sale, the ex-

clusive right to the patented machine in certain parts of the United States had been disposed of, and the sale extended to the unsold territory, the exact extent of which at the time of the sale was not known. A deed of assignment for such unsold territory was executed on the 20th day of January 1853, and recorded on the 16th day of March in the same year. Cotemporanous with the sale, and on the same day, a bond was taken from Newman to the defendant, in the penal sum of $3000, conditioned, that Newman should pay over to the defendant any money which he should receive from any sales made by himself or by agents.

The deed of assignment, only extended to the unsold territory and, independent of the bond, would not have conferred a right to the purchase money, due on sales made before its date. The bond recited that a sale had been made on the same day of all the unsold territory, and then provided, as stated above, for the payment over of any moneys which might be received from sales.

The defence set up to the note was, that subsequently to the execution of the deed and bond, a sum of money, exceeding the amount of the note, was received by Newman, on account of the sale of the patent right in the State of South Carolina, which he failed to pay over, of all which it was claimed the plaintiffs, before they obtained the note, had notice.

The case was tried by a jury. The evidence to show a sale of the patent right in the territory of South Carolina and the receipt of money on that account by Newman, consisted of his declarations, made to the defendant and another person examined as a witness. Both the sale and the receipt of the money were denied, and the evi-

dence of Newman disproving the sale, was offered by the plaintiffs. There was evidence impeaching the character of Newman for veracity. It came out in the evidence offered by the defendant, that in some of the conversations between him and Newman, the latter had denied making any sale of the right for the State of South Carolina. There was also evidence tending to show, that the defendant had admitted to one of the plaintiffs, before they received the note, that if no such sale had been made, he was liable; and one of the plaintiffs testified, that this admission was unconditional; this was denied by the defendant in his testimony.

If there had been a sale of the right for South Carolina, there was no evidence to fix its date. It might have been made before or after the assignment of the patent right, to the defendant.

Among other matters, the Court, in its charge to the Jury, stated that, if the consideration of the note extended as well to the unsold territory covered by the patent right, as to any money due and payable on sales made before the assignment, then the withholding such money to the extent of the amount so withheld, might be considered a failure of the consideration of the note; but if the money was received on account of a sale made after the transfer of the patent right for the unsold territory, then it could only constitute a matter of set-off, as money of the defendant had and received by Newman; and the Jury were directed, if they found for the defendant, to say in their verdict, in which mode the money was received, leaving the question, whether a set-off could be allowed against the plaintiffs, to be afterwards considered.

The Court also stated to the Jury, that the usual and proper evidence of the transfer of a patent right was by a written assignment recorded in the Patent Office, within the proper time, and no other transfer would be valid as to a subsequent purchaser, without notice. That the admissions of Newman, as to the transfer of the patent right for the State of South Carolina, were competent evidence, but that the want of, or the failure on the part of the defendant, to produce written evidence, was, under the circumstances of the case, a matter to be taken into consideration, in determining the effect of those admissions as testimony. The Court further charged the Jury, that evidence of admissions was to be received with caution, and that even if the Jury were satisfied that they were made, although, then, entitled to weight as evidence proving the facts admitted, they were not conclusive, but the character of the admissions, and the circumstances under which they were made, might be considered. They were also to be taken in connection with the other facts proved in the case, and the truth found upon the whole evidence.

The Jury, having found a verdict in favor of the plaintiffs, for the whole amount of the note, the defendant moved for a new trial.

GHOLSON, J.

In the strongest view in which the facts of the case can be presented for the defendant, the transaction could only amount to this,—that Newman transferred to Johnson the unsold patent rights, and the money due for those sold, receiving in part consideration the note on which the action is founded. This money might come into the hands

of Newman, and to secure its payment over to Johnson, the bond was taken; but still the money from the time of the transfer was the money of Johnson.

In this view of the matter, the most favorable for the defendant, he would on the receipt of any money by Johnson have been entitled to an action for so much money had and received. Whether a bond having been taken, such right of action would have been merged in it, as a higher security, is a question which does not affect the principle on which the case stands; for, taken either way, in an action on the note, the claim could only be asserted as a set-off.

And this leads to the inquiry, whether the defendant could claim such a set-off against the present plaintiffs, endorsees of the negotiable note before its maturity, though they might have had notice of the existence of the claim when they obtained the note?

The right of set-off depends on the provisions of the statute; it was not allowed at common law, 15 *M. & W.* 446. The statutes on the subject of set-off were repealed by the Code, and we are now to look into its provisions for the rules by which it is governed. Upon looking into those provisions, I do not think any new rule as to the *right* of set-off was introduced.

Section 97 of the Code provides: "A set-off can only be pleaded in an action founded on a contract, and must be a cause of action arising upon contract, or ascertained by the decision of the Court."

A set-off must be a cause of action, and properly it must be a cause of action against the adverse party; in other words, to constitute a set-off, there must be mutual demands. But when there are such mutual demands,

one party should not be allowed to defeat the right of set-off of the other by a transfer or assignment of his demand. This matter is accordingly regulated by Section 99 of the Code, which provides: "When cross-demands have existed between persons under such circumstances, that if one had brought an action against the other, a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other, but the two demands must be deemed compensated, so far as they equal each other."

In the sense in which the term "cross-demands" is used in that section, they must have existed before the assignment, and have been such that at the time of the assignment each party could have brought an action on his demand against the other. In this view it is obvious, that no such demand was ever held by Newman against Johnson, prior to the endorsement of the note to the plaintiffs. The note having been transferred before it became due, no cause of action had accrued thereon to Newman, before he assigned the note to the plaintiffs. There never was, therefore, cross-demands between Johnson and Newman within the meaning of the statute, and there was nothing to prevent an endorsement of the note by Newman, before it became due, unaffected by any independent claim held by Johnson, though the party taking the note had knowledge thereof.

There is another Section of the Code, which remains to be noticed. It is provided in Section 26, that "in the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off, or other defence now allowed; but this section shall not apply to negotiable bonds, promissory notes, or bills of

exchange, transferred in good faith and upon good consideration, before due."

Before the Code a "thing in action" could not be assigned so as to avoid the necessity of suing in the name of the assignor. By the Code, the assignee was allowed to sue in his own name, and it was therefore deemed necessary to provide in Section 26, that the right of action given to the assignee should not prejudice any set-off or defence, *now allowed*. It is clear, that it was not intended by the first part of the Section to change the law of set-off, and any inference of such change as to negotiable instruments, is expressly guarded against by the latter part of the Section, which provides, that it shall not apply to such instruments, transferred in good faith and upon good consideration, before due.

I am satisfied, that Section 26 in no respect affects or changes the *right of set-off*, which is regulated by the other sections, to which allusion has been made. That section was borrowed from a similar one in the New York Code, and hence the expression "now allowed," which, as the statutes in force before their Code, on the subject of set-off, were not repealed, showed an intention not to alter the law. Accordingly in the case of Beckwith *vs.* Union Bank, 4 *Sandf.* 604, it was so expressly held by the Superior Court of New York. The circumstance that our Code repeals the former statutes of set-off and re-enacts their provisions, cannot be considered as giving to Section 26 any greater effect than has been given to it in New York, from the Code of which State it has been copied.

Being therefore satisfied that the defendant cannot avail himself of the defence he sets up against the present plain-

tiffs, it is not necessary to pass on the other questions raised on the motion for a new trial, which will be overruled.

LINCOLN, SMITH & WARNOCK for plaintiff.

NORTON and Judge PROBASCO, for defendant.